# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

BERRYON F. MOORE, III,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

Case No. 2:17-cv-941
Crim. No. 2:13-cr-289
Judge George C. Smith
Magistrate Judge Elizabeth P. Deavers

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this *Motion to Vacate under 28 U.S.C. § 2255*. This matter is before the Court on the *Motion to Vacate under 28 U.S.C. § 2255*, Respondent's *Answer in Opposition*, Petitioner's *Reply,* and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the Motion be **DENIED** and this action be **DISMISSED**.

Respondent's motion for leave to file an untimely response (*see* ECF No. 317) is **GRANTED**.

**Facts and Procedural History**

Petitioner challenges his underlying conviction, pursuant to his negotiated *Plea Agreement,* on Count One of the *Second Superseding Indictment*, conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 841(b)(1)(C), § 846. (ECF Nos. 248, 255.) On June 24, 2015, the Court imposed a sentence of 105 months imprisonment to be followed by three years supervised release. (ECF No. 287.) The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of the case as follows:

In December 2013, Berryon F. Moore, III was indicted on multiple federal charges related to the distribution of heroin. He was released on bond. Moore was subsequently charged in a criminal complaint with additional federal drug offenses that he committed while on pretrial release in the first case. To resolve both cases, Moore pleaded guilty to Count One (conspiracy to possess heroin with the intent to distribute the drug) in the first case and also admitted that he had committed additional heroin-distribution offenses while on pretrial release.

At sentencing, Moore advanced a sentencing-disparities argument in support of his request for a term of imprisonment below his Sentencing Guidelines range. The district court in fact sentenced Moore to a below-Guidelines term of imprisonment, but failed to specifically acknowledge Moore's sentencing-disparities argument. During the sentencing hearing, the court divided Moore's sentence into two separate, consecutive terms of imprisonment: one for Count One and the other for committing an offense while on pretrial release.

Moore now appeals, claiming that the district court erred by (1) imposing a sentence for committing an offense while on pretrial release, and (2) not acknowledging Moore's argument concerning sentencing disparities. . . .

I. BACKGROUND

A. Indictment and guilty plea

Between 2010 and 2013, Moore participated in a scheme to distribute heroin in Steubenville, Ohio. An investigation by the FBI into this conduct resulted in Moore's arrest in December 2013. That same month, Moore was indicted on two federal counts related to heroin distribution. Moore was then released on bond pending trial. A second superseding indictment was filed in October 2014, charging Moore with five counts related to heroin and cocaine distribution. The conduct charged in this indictment, as in the original indictment, allegedly occurred between 2010 and 2013.

In December 2014, Moore was arrested again because he continued to sell heroin while he was on pretrial release. A federal criminal complaint was subsequently filed in a new case charging Moore with offenses related to his 2014 conduct.

In January 2015, Moore entered into a plea agreement with the government to resolve both cases. Under the agreement, Moore agreed to plead guilty to Count One of the second superseding indictment in the first case—which charged him with conspiracy to possess heroin with the intent to distribute the drug, in violation of 21 U.S.C. §§ 841(a), (b)(1)(C) and 846—in exchange for the government's promise to dismiss (1) the remaining counts of the indictment, and (2) the criminal complaint in the second case. Moore acknowledged that he faced a maximum term of imprisonment of 20 years on Count One, and that he was also subject to an additional term of imprisonment of up to 10 years under 18 U.S.C. §

3147 because he had committed a separate felony offense while on pretrial release. Moreover, Moore "agree[d] that because [he] committed the offense of conspiring to possess with intent to distribute heroin while on release in this case, pursuant to the statutory sentencing enhancement under 18 [ ] U.S.C. [§] 3147, pursuant to U.S.S.G. § 3C1.3 the offense level will be increased by 3 levels."

A magistrate judge conducted a change-of-plea hearing in January 2015, during which Moore pleaded guilty to Count One pursuant to the plea agreement. The government read the above-noted terms of the agreement into the record during the hearing, and Moore confirmed the accuracy of those terms. At the hearing, Moore further admitted "that while on pretrial release . . . , he committed the offense of conspiring to possess with intent to distribute heroin." The district court subsequently accepted Moore's guilty plea.

B. Sentencing

After the change of plea, the United States Probation Office issued a Presentence Report (PSR) that calculated Moore's Guidelines range as 135 to 168 months of imprisonment. Moore subsequently submitted a sentencing memorandum in which he raised various arguments in favor of an unspecified, below-Guidelines sentence. One of those arguments concerned the need to avoid sentencing disparities between Moore and his codefendants, and between Moore and heroin offenders nationally. The government's initial sentencing memorandum recommended a term of imprisonment of 135 months—the bottom of the applicable Guidelines range. After defense counsel asserted that this recommendation was at odds with their plea negotiations, however, the government submitted an addendum recommending a below-Guidelines sentence of 105 months of imprisonment.

The district court subsequently held a sentencing hearing in June 2015. Neither Moore nor his defense counsel raised any objections during the hearing to anything in the PSR. After adopting the factual findings in the PSR, the court acknowledged Moore's written request for a below-Guidelines sentence. The court also recognized the government's written request for a sentence of 105 months of imprisonment.

Moore's defense counsel then orally advocated for a sentence less than 105 months of imprisonment, making several arguments in support of that request. One of those arguments was specifically premised on the need to avoid sentencing disparities. Moore's counsel particularly noted that the average variance below the Guidelines range for heroin sentences nationwide is 24 months.

After Moore made a brief statement, the district court stated that it "will keep these arguments, on both sides, in its mind as it goes through this." Following a discussion between the court and counsel concerning one of the sentencing enhancements, the court sentenced Moore to "a term [of imprisonment] of 90

months on Count 1, followed by 15 months for defendant's pretrial release violation pursuant to 18 United States Code, Section 3147, for a total of 105 months." This total term of imprisonment is 30 months below the bottom of Moore's Guidelines range.

When it listed a series of mitigating factors, the district court did not include any reference to Moore's argument regarding sentencing disparities. The court did reiterate, however, that it had "consider[ed] the parties' recommendations." Before concluding the hearing, the court asked the parties if they had "any objection to the sentence just pronounced that have not been previously raised." Both the government's counsel and Moore's counsel said that they did not. Despite styling its oral sentence as two separate terms of imprisonment, the subsequently issued judgment details only one term of 105 months of imprisonment for Count One. This timely appeal followed.

*United States v. Moore,* 654 F. App'x 705, 706-08 (6th Cir. 2016). On June 29, 2016, the United States Court of Appeals for the Sixth Circuit affirmed the Judgment of this Court. (*Id.*)

On October 25, 2017, Petitioner filed this *Motion to Vacate under 28 U.S.C. § 2255*. As his sole ground for relief, Petitioner asserts that he was denied the effective assistance of counsel at sentencing and on direct appeal because his attorneys failed to raise an issue regarding the government's alleged breach of the terms of his *Plea Agreement* based on the four level enhancement in Petitioner's recommended sentence under the advisory United States Sentencing Guidelines as a leader or organizer of the offense under U.S.S.G. § 3B1.1(a). *See PreSentence Investigation Report,* ¶¶ 42, 43. It is the position of the Respondent that this claim fails to provide a basis for relief.

**Standard of Review**

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or

when the trial court lacked jurisdiction, when the sentence was in excess of the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). In the absence of constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States,* 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962) ); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). However, "'[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exception circumstances.'" *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995) (unpublished) ). Further, if a petitioner fails to raise a non-constitutional claim at trial or on direct appeal, he or she has waived the matters for collateral review except where the errors amount to something akin to a denial of due process. Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion to vacate under § 2255 unless the petitioner shows: (1) cause and actual prejudice sufficient to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime. *Ray v. United* States, 721 F.3d 758, 761 (6th Cir. 2013) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998) ) (internal citations omitted).

**Ineffective Assistance of Counsel**

"In all criminal prosecutions," the Sixth Amendment affords "the accused. . . the right. . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984).

*Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness." *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Poole,* 547 F. App'x at 754 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland,* 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987). . . .Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. Id. citing *Wilson*. . . .The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013). Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999) (citations omitted).

On January 17, 2015, Petitioner signed a *Plea Agreement* agreeing to enter a guilty plea to Count One of the *Second Superseding Indictment*, which charged him with conspiracy to possess with the intent to distribute heroin. Under the terms of the plea agreement, which Petitioner signed representing that he understood he faced a maximum term of twenty (20) years imprisonment, and an additional ten years because he committed the offense while on pretrial release. (ECF No. 248, PAGEID # 674.) The government agreed to dismiss the remaining charges in the *Second Superseding Indictment*, and the complaint with additional charges in Case 2:14-MJ-613, and not to file additional criminal charges against the him based on the activities charged or other narcotics violations occurring in the Southern District of Ohio prior to the date of the *Second Superseding Indictment*. (PAGEID # 675.) For sentencing purposes, the parties agreed that Petitioner would obtain a three level reduction in his recommended guideline sentence for timely notifying the authorities of his intention to plead guilty and his acceptance of

responsibility. Petitioner's relevant conduct under the advisory United States Sentencing Guidelines would be between 100 and 400 grams of heroin, resulting in an offense level of 26, and would be increased by three levels under U.S.S.G. § 3C1.3, because he committed the offense while on pretrial release. The parties also agreed that, under the provision of U.S.S.G. § 2D1.1(b)(1), Petitioner would receive a two level increase in his recommended sentence for possession of a firearm during the commission of the offense. Petitioner indicated that he understood that the foregoing provisions would not be binding on the District Court, which would make the final determination on all sentencing issues. (PAGEID # 676.) Petitioner acknowledged that the Court had the authority to impose any sentence within the statutory maximum, that no sentence had yet been determined, and that any estimate of a probable sentencing range he may have received was not binding. The United States expressly made no promise or representation regarding the sentence, and Petitioner acknowledged that he would be unable to withdraw his guilty plea based on the actual sentence imposed. (PAGEID # 676-77.)

As discussed, the probation officer recommended a four level increase in Petitioner's recommended guideline sentence under the provision of U.S.S.G. § 3B1.1(a) based on Petitioner's leadership role in the offense:

> Berryon Moore, III recruited accomplices, including Kyle Irvin, Charles Thompson, Teresa Brown, and Lashawn Davis to become involved in the heroin distribution conspiracy. He directed the activities of these individuals by connecting them with heroin customers, providing transportation, sending them to conduct individual sales, and paying them for their participation. He kept a larger share of the fruits of the crime. The conspiracy was extensive and involved more than five criminal participants. Therefore, Mr. Moore is deserving of a 4 level role enhancement.

*PreSentence Investigation Report* ¶ 43. Petitioner had a recommended guideline sentence of 135 to 168 months. The probation officer recommended imposition of 135 months. Defense counsel did not file objections to the *PreSentence Investigation Report*, but argued for a lesser sentence

under the factors set forth in 18 U.S.C. § 3553(a). *See Sentencing Memorandum* (ECF No. 283, PAGEID # 770-79.) The United States recommended imposition of 105 months incarceration, to be followed by five years of supervised release, consistent with plea negotiations. *Addendum to Sentencing Memorandum* (ECF No. 285, PAGEID # 788); *Sentencing Transcript* (ECF No. 304, PAGEID # 870.)

At sentencing, defense counsel argued that Petitioner's role in the offense was minimal, at best, although his conduct may have met the legal definition of an organizer under § 3B1.1(a),. "This was, I would submit, really more of a cooperative endeavor with other individuals[.]" *Sentencing Transcript* (ECF No. 304, PAGEID # 872.) Defense counsel further argued that the four point enhancement for being an organizer or leader in the offenses, as well as the two point enhancement under U.S.S.G. § 2D1.1(b)(12), for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, simply overstated Petitioner's involvement in the crime. (PAGEID # 872-73.) "[T]here is evidence that he recruited people. . . people worked for him. . . . But. . . this doesn't describe a situation where Berryon Moore is saying, okay, you do this. . . you work for me, you get a salary, that kind of thing. Instead, I'd characterize it more as a coordinator role." (PAGEID # 876.) Defense counsel also referred to other mitigating factors included in the *PreSentence Investigation Report* and to similar sentences imposed on other defendants in similar cases in support of a reduced sentence. (PAGEID # 873-75.)

The prosecutor responded: "[I]f the Court went with the government's sentence of 105 months, Mr. Moore already has basically escaped the application of those enhancements, those recommended by the probation department. That's why the United States is standing by its recommendation of 105 months." (*Id*.) The prosecutor agreed that the organizer role applied,

9

but indicated that the United States nonetheless recommended a sentence that would not take the four point enhancement into account. (PAGEID # 878.) As discussed, the Court imposed the sentence recommended by the government, of an aggregate term of 105 months, to be followed by three years supervised release. (*Id.*) Petitioner claims that the prosecutor breached the terms of his *Plea Agreement* by endorsing the probation officer's assessment of a four-level increase in Petitioner's recommended guideline sentence, and that his attorneys performed in a constitutionally ineffective manner by failing to raise the issue and sentencing and on direct appeal. *Petition* (ECF No. 313-1, PAGEID # 926.)

"Plea bargains are essentially contracts," *Puckett v. United States*, 556 U.S. 129, 137 (2009) (citing *Mabry v. Johnson,* 467 U.S. 504, 508 (1984)), and a prosecutor's violation of the terms of a plea agreement violates due process. *Santobello v. New York*, 404 U.S. 257 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. at 262. Thus, courts enforce promises made during plea bargaining that induce a criminal defendant to waive his constitutional rights and plead guilty. *United States v. Barnes*, 278 F.3d 644, 647 (6th Cir. 2002) (quoting *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)). In interpreting and enforcing the terms of a plea agreement courts use traditional principles of contract law. *United States v. Lukse*, 286 F.3d 906, 913 (6th Cir. 2002) (citing *United States v. Robinson,* 924 F.2d 612, 613 (6th Cir. 1991)). Any ambiguities in a plea agreement must be construed against the government. *United States v. Fitch*, 282 F.3d 364, 368 (6th Cir. 2002) (citing *United States v. Randolph*, 230 F.3d 243, 248 (6th Cir. 2000)). The Supreme Court's decision in *Santobello* "proscribes not only explicit

repudiation of the government's assurances" but must also be read "to forbid end-runs around them." *United States v. Moncivias*, 492 F.3d 652, 662 (6th Cir. 2007) (citations omitted).

Here, however, the record does not support Petitioner's allegation that the prosecutor breached the terms of his *Plea Agreement* by stating, in response to the Court's inquiry, that the recommended sentencing enhancements contained in the *PreSentence Investigation Report* were legally appropriate. The *Plea Agreement* does not contemplate any minimum or maximum sentence. Moreover, despite Petitioner's argument to the contrary, nothing in the *Plea Agreement* indicates that Petitioner would not be subject to any additional sentencing enhancements under the advisory United States Sentencing Guidelines. The government did not agree to an explicit total offense level. To the contrary, under the terms of paragraph 7, to which Petitioner refers, Petitioner explicitly acknowledged that the provisions of that paragraph would not be binding and that the "final determination of all sentencing issues" would be made by the Court. *Plea Agreement* (ECF No. 248, PAGEID # 676.) Thus, the terms of the *Plea Agreement* do not limit Petitioner's potential sentence. Paragraph 10 of the *Plea Agreement* provides that Petitioner would not be able to withdraw his guilty plea if the Court refused to accept any of the recommendations made in paragraph 7 regarding application of the sentencing guidelines. (PAGEID # 677.) Petitioner explicitly indicated that he understood that the Court had the authority to impose any sentence within the statutory maximum, and that he could not withdraw his plea based on the sentence imposed. The United States expressly made no promise or representation regarding the sentence. (PAGEID # 676-77.) The *Plea Agreement* also provides that no off the record promises regarding its terms had been made by the parties. "No additional promises, agreements, or conditions have been made relative to this matter other than those

expressly set forth herein, and none will be made unless in writing and signed by all Parties." (PAGEID # 677.)

*United States v. Fitch*, 282 F.3d 364 (6th Cir. 2002), referred to by the Petitioner, involved arguably ambiguous terms contained within a plea agreement, whereby the government had agreed that "no other relevant conduct" would be used to increase the defendant's base offense level, but then "vigorously advocated" for a four point increase based on the defendant's leadership role in the offense. *Id*. at 366, 368. Such are not the circumstances here. Similarly, Petitioner's reference to *United States v. Jackson*, 296 F. App'x 491 (6th Cir. 2008), does not assist him. In *Jackson*, the government agreed to notify the district court that the defendant had committed the offense after one conviction for a crime of violence, resulting in a base offense level of 20, and the prosecutor failed to do so. *Id*. at 493-94. Again, these are not the circumstances here. The *Plea Agreement* in this case contains no such ambiguity with respect to its terms regarding sentencing. Moreover, the record reflects that the prosecutor made all of the recommendations at sentencing regarding the application of the sentencing guidelines to which it agreed under the provisions of the *Plea Agreement*. Here, the prosecutor advocated for imposition of a sentence of 105 months – well below Petitioner's recommended guideline sentence. The recommendation for 105 months of imprisonment in effect obviated the impact of the four point enhancement of Petitioner's sentence based on his leadership role in the offense. *See United States v. Fouse*, 250 F. App'x 704, 711-12 (6th Cir. 2007) (the fact that the probation department raised the disputed conducted and enhancement does not equal a breach of the plea agreement) (citing *United States v. Garavaglia*, 178 F.3d 1297, 1999 WL 220125 (6th Cir. 1999) (table decision)). By entry of his guilty plea, Petitioner substantially reduced his potential prison

sentence, and obtained a sentence well below that recommended under the advisory sentencing guidelines.

The government did not breach the *Plea Agreement*. Thus, under these circumstances, Petitioner has failed to establish the denial of effective assistance of counsel for failing to object or raise an issue regarding an alleged breach of the *Plea Agreement* on appeal.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that the *Motion to Vacate under 28 U.S.C. § 2255* (ECF No. 313) be **DENIED** and this action be **DISMISSED.**

Respondent's motion for leave to file an untimely response (*see* ECF No. 317) is **GRANTED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

*s/ Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge